UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Christine M., | Case No. 23-cv-0296 (WMW/DJF) |
| Plaintiff, | **ORDER** |
| v. | |
| Martin J. O'Malley, *Commissioner of the Social Security Administration*, | |
| Defendant. | |

---

This matter is before the Court on the parties' cross-motions for judgment on the administrative record. (Dkts. 14, 16.) For the reasons discussed below, the Court grants Defendant's motion and denies Plaintiff's motion.

## BACKGROUND

Plaintiff Christine M.[1] filed applications for Disability Insurance and Supplemental Security Income benefits on April 29, 2019. Admin. Rec. (Dkt. 13) at 260, 261, 468-69. Plaintiff alleged that she became disabled and unable to work as of January 1, 2018, as a result of lower back and neck injuries; surgeries on her back, neck and left shoulder; degenerative disc disease with stenosis and osteoarthritis; heart palpitations; irritable bowel syndrome ("IBS"); hypothyroidism and headaches. *Id.* at 492. Plaintiff later amended her disability onset date to January 18, 2021, the day before her 50th birthday. *Id.* at 214.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

For purposes of Social Security disability benefits, an individual is considered disabled if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that she is not engaged in any "substantial gainful activity." *Id.* § 416.920(a)(4)(i). If that requirement is satisfied, the claimant must then establish that she has a severe medically determinable impairment or combination of impairments at step two. *Id.* § 416.920(a)(4)(ii). At step three, the Commissioner must find that the claimant is disabled, if the claimant satisfies the first two steps and the claimant's impairment meets or is medically equal to one of the listings in 20 C.F.R. Part 404, Subpart P, App'x 1. *Id.* § 416.920(a)(4)(iii). If the claimant's impairment does not meet or is not medically equal to one of the listings, the evaluation proceeds to step four. At step four, the claimant bears

2

the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work. *Id.* § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work that exists in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

Plaintiff's applications for benefits were denied initially and on reconsideration. Admin. Rec. at 260, 261, 264, 265. In October 2020, an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's applications, and, after the hearing, denied Plaintiff's applications. *Id.* at 148-208, 307-20. The Appeals Council subsequently vacated the ALJ's decision, finding that the ALJ did not sufficiently evaluate the supportability and consistency of a medical opinion in the record. *Id.* at 329-30. The Appeals Council remanded the matter to the ALJ for further consideration. *Id.* at 330-31.

In January 2022, the ALJ held a second hearing, at which Plaintiff testified and was represented by counsel. *Id.* at 209-29. The ALJ determined after the second hearing that Plaintiff has multiple severe impairments: restless leg syndrome; IBS; degenerative disc disease of the lumbar spine; osteopenia; bursitis, tendinitis, and AC joint and impingement syndrome in her left shoulder and bicep; degenerative disc disease of the cervical spine; rotator cuff disorder; sciatica; migraine headaches; occipital neuralgia; Raynaud's

3

syndrome;[2] Sjögren's syndrome;[3] and post-laminectomy syndrome.[4] *Id.* at 19. However, the ALJ found that none of these impairments, either alone or in combination, met or medically equaled any of the listed impairments. *Id.* at 19-21. The ALJ determined that Plaintiff has the capacity to perform light work with a multitude of physical and mental restrictions, including that she must be allowed to stand up to five minutes after 30 minutes of sitting, to sit for up to five minutes after 30 minutes of standing, can tolerate only a moderate noise work environment, and that she must be off-task 10 percent of the workday and absent from work one day per month. *Id.* at 21. The ALJ noted that, although these restrictions will prevent Plaintiff from returning to her previous employment as a medical-records clerk, there are jobs that Plaintiff can perform in the national economy. *Id.* at 27-28. For this reason, the ALJ concluded that Plaintiff is not disabled. *Id.* at 29. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and this lawsuit

---

[2] Raynaud's syndrome, also called Raynaud's phenomenon, "is a condition that causes the blood vessels in the extremities to narrow, restricting blood flow." National Institutes of Health, National Institute of Arthritis and Musculoskeletal and Skin Diseases, *Raynaud's Phenomenon*, https://www.niams.nih.gov/health-topics/raynauds-phenomenon [https://perma.cc/ZRZ4-SNWK].

[3] Sjögren's syndrome is an autoimmune disorder where "[t]he body's immune system attacks glands that secrete fluid, such as the tear and saliva glands." National Institutes of Health, NHSinform, *Sjögren's syndrome*, https://www.nhsinform.scot/illnesses-and-conditions/immune-system/sjogrens-syndrome/ [https://perma.cc/XC8D-UEM3].

[4] Post-laminectomy syndrome, also called Failed Back Surgery Syndrome, is defined as "back pain . . . [that] persists or begins after surgical procedures are performed to treat lumbar disc herniations." National Institutes of Health, National Library of Medicine, *Clinical evaluation of the post-laminectomy syndrome in public hospitals in the city of São Luís, Brazil*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4574019/ [https://perma.cc/2LND-U9NX].

followed. *See* 42 U.S.C. § 405(g) (providing for judicial review of final decisions of the Commissioner of the Social Security Administration).

## ANALYSIS

The Court's review of the Commissioner's decision is limited to determining whether that decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence . . . is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold . . . is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Plaintiff challenges the ALJ's determination that there are jobs that Plaintiff can perform, asserting that the vocational expert's testimony conflicts with the limitations in her RFC. Plaintiff also contends that the medical evidence does not support the ALJ's determination that Plaintiff would miss one day of work per month and be off-task 10 percent of each day.

### I.  Vocational Expert Testimony

At the first hearing before the ALJ, Plaintiff's attorney questioned the vocational expert about whether the requirement that an employer allow Plaintiff to be off-task 10 percent of a workday would be work preclusive. Specifically, Plaintiff's attorney

5

questioned the vocational expert about the effect on Plaintiff's ability to work if the 10 percent figure is "spread out . . . through the entire day" or if Plaintiff instead took unscheduled breaks amounting to five percent of the workday, or 24 minutes at a time. Admin. Rec. at 201. The vocational expert testified that an employer would "probably not" tolerate Plaintiff taking three unscheduled 24-minute breaks when working three days a week. *Id.* at 201-02. Plaintiff's attorney also questioned the vocational expert about whether Plaintiff's absenteeism would create a problem during a hypothetical 30- to 90-day "probationary period" at the beginning of employment. *Id.* at 204. The vocational expert agreed that an employee could not miss three days of work in a hypothetical 90-day probationary period. *Id.*

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because the RFC allows Plaintiff to be off-task 10 percent of each workday and to be absent one day per month, without specifying whether the time off-task would be spread throughout the day and whether the absenteeism would occur during a hypothetical probationary period. According to Plaintiff, because the RFC as formulated encompasses time off-task taken at once instead of distributed throughout the day and absenteeism during a probationary period, the RFC precludes Plaintiff from maintaining competitive employment.

Plaintiff fails to acknowledge, however, the vocational experts' testimony at both the first and second hearings established that there are jobs that Plaintiff can perform that would allow her to be off-task 10 percent of a workday and absent an average of one day per month. Indeed, the vocational expert at the second hearing did not address the

6

distribution of Plaintiff's time off-task or the effect of absenteeism on any job's probationary period when opining that there are jobs that Plaintiff could perform. And Plaintiff did not ask the expert to comment on those issues. The ALJ properly relied on the expert's testimony when determining that Plaintiff could work. *Swedberg v. Saul*, 991 F.3d 902, 906 (8th Cir. 2021); *see also Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1004 (8th Cir. 2018) ("We have consistently held that if 'substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony.'") (quoting *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010)).

The ALJ's conclusions based on the hypothetical questions posed to the vocational experts are supported by substantial evidence. The ALJ was not required to adopt Plaintiff's belief that she might be off-task in certain increments of time, or absent during a hypothetical probationary period. *See Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) ("Subjective complaints may be discounted if the claimant's testimony is inconsistent with the evidence as a whole."). The ALJ specifically addressed evidence in the record that conflicted with the RFC in this regard, observing that Plaintiff was working part-time and that Plaintiff testified that she stood for up to an hour at a time at her job. Admin. Rec. at 23. Despite this testimony, the ALJ determined that Plaintiff's RFC should allow her to stand for five minutes after 30 minutes of sitting or to sit for five minutes after 30 minutes of standing. *Id.*

The ALJ also noted that Plaintiff's migraines had improved substantially with treatment and Plaintiff was not experiencing migraines with the frequency she had

7

previously, and therefore, the record supported an absentee rate of only one day per month. *Id.* at 24.  Finally, the ALJ determined that although Plaintiff's IBS might require her to occasionally leave her workstation, the dearth of evidence of severe IBS symptoms supported a conclusion that Plaintiff would be off-task only 10 percent of the workday. *Id.* at 25.  The ALJ also found that the opinions of Plaintiff's physician, Dr. Ana Groeschel, were inconsistent with Plaintiff's reported activities, and the ALJ determined that the RFC properly accounted for all physical restrictions that the record supported. *Id.* at 26-27.

An RFC is ultimately an administrative determination for the ALJ to make. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).  The ALJ is required to "weigh all the evidence in the record" when formulating the RFC.  *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016).  Substantial evidence in the record as a whole supports the ALJ's RFC determination, and the vocational experts' testimony was not contrary to the RFC.

## II.     Support for RFC

Plaintiff also argues that the ALJ's determination that Plaintiff would miss one day of work per month and be off-task 10 percent of every workday is not supported by any medical evidence.  Plaintiff asserts that "'some medical evidence' must support the determination of the claimant's RFC," *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004), and Plaintiff contends that there are no medical opinions in the record stating that Plaintiff would miss one day of work each month or be off-task 10 percent of any workday.

The ALJ, however, discussed the medical opinions in the record regarding how frequently Plaintiff would miss work or be off-task and concluded that those opinions were

not entirely consistent with Plaintiff's reports of her own abilities or with other medical evidence. The ALJ may rely on a claimant's subjective reports of her activities, assuming those reports are credible. *See Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (finding that the RFC must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations"). Contrary to Plaintiff's argument, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). The ALJ examined all of the evidence in the record in articulating Plaintiff's RFC, and properly explained his determination that certain medical evidence was less persuasive than other evidence. The RFC is supported by substantial evidence.

## ORDER

Substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled. Therefore, based on the foregoing analysis and all the files, records and proceedings herein,

**IT IS HEREBY ORDERED**:

1. Defendant Martin J. O'Malley's motion for summary judgment, (Dkt. 16), is **GRANTED**.

2. Plaintiff Christine M.'s motion for judgment, (Dkt. 14), is **DENIED**.

3. This matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 29, 2023

s/ Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge